767 F.2d 922
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
TARA WEDO, PLAINTIFF-APPELLEE,
v.
CITY OF BROOK PARK, OHIO, DEFENDANT-APPELLANT.
 NOS. 84-3662, 84-3663
 United States Court of Appeals, Sixth Circuit.
 6/3/85
 
 N.D.Ohio
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 Before: ENGEL and MARTIN, Circuit Judges; and PHILLIPS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal by the defendant employer from an award of back pay and attorneys' fees for sex discrimination under Title VII. We affirm.
 
 
 2
 Tara Wedo, the plaintiff, was the wife of a police officer with the defendant City of Brook Park, Ohio, and the daughter-in-law of the mayor of that city. On January 11, 1979, she applied to become a member of the city police force.
 
 
 3
 At that time, Brook Park had a two-step hiring process for its police force. Applicants who passed various tests and were recommended by the Chief of Police were placed on a Patrolman's Eligibility List, from which police officers ultimately were selected. The tests included a written examination, a medical examination, a physical fitness test, a security check, and a polygraph examination. New officers were chosen from the three highest ranking candidates currently on the Eligibility List.
 
 
 4
 Wedo passed the written examination, the medical examination, the physical fitness test, and presumably the security check. The polygraph examination, however, indicated deceptions with regard to theft of more than $25, use of narcotics, and sexual activity. Chief of Police Thomas Dease telephoned Wedo at her home on April 19, 1979, and discussed the polygraph examination and the areas of possible deception. Dease also discussed the possibility of conflict in Wedo's roles as police officer, wife, and mother, particularly since her husband would be an officer in the same department. That same day, Dease submitted his list of eligible candidates to the City Safety Director, Albert Castelli. Wedo was not a recommended candidate.
 
 
 5
 Wedo subsequently brought this Title VII action. Two days before trial, a second polygraph examination by a much more experienced examiner found no hint of deception in her responses.
 
 
 6
 The case was tried without a jury on April 4 and 6, 1984, and a finding for plaintiff was made with a back pay award of $41,262.23. In a subsequent opinion filed August 2, 1984, attorneys' fees were awarded in the amount of $13,618.50 and costs of $1,184.50. The City of Brook Park appeals the finding of discrimination as clearly erroneous, as well as the award of back pay. They claim Wedo was unlikely to have been appointed to the position she sought, and they challenge the calculation of attorneys' fees.
 
 
 7
 The City concedes that Wedo set out a prima facie case of disparate treatment sex discrimination, but contends that it articulated legitimate nondiscriminatory reasons for her rejection. However, the trial court found that the only reasons relied upon by Dease were the supposed thefts and use of drugs. Because other candidates admitted to more serious thefts and drug use, and because her application was evaluated differently from those of male applicants, the court found that these reasons were pretextual and asserted to disguise the city's attempt to discriminate against Wedo on account of gender. This finding must be affirmed unless clearly erroneous.
 
 
 8
 The Supreme Court has recently reexamined the clearly erroneous standard in Anderson v. City of Bessemer City, 105 S. Ct. 1504 (1985), also a Title VII case.
 
 
 9
 '[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52 if it undertakes to duplicate the role of the lower court. 'In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo.' Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 123 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. United States v. Yellow Cab Co., 338 U.S. 338, 342 (1949); see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844 (1982).
 
 
 10
 105 S. Ct. at 1511-12. Regardless of how this Court might have decided the case, we cannot say that the district court's view is not plausible in light of the record viewed in its entirety.
 
 
 11
 The city also objects to the grant of back pay when Wedo has not shown that she in fact would have been hired, but for sexual discrimination. It is true that it is uncertain whether Wedo would have been hired if listed. However, the burden is on the defendant to show no actual harm. Kamberos v. FTE Automatic Electric, 603 F.2d 598, 602 (7th Cir. 1979). In the face of a finding of uncertainty whether plaintiff would have been hired, it was not an abuse of discretion for the district court to award full back pay. See generally Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975).
 
 
 12
 The City objects to the calculation of attorneys' fees on the grounds that the court should have held a hearing to determine an appropriate billing rate and should have bifurcated the rate between trial and office work. The district court wrote, 'Having reviewed countless petitions for attorneys' fees over the years, the Court knows well enough the fair market value of legal services in this particular geographic area and for individual attorneys of varying levels of experience within a law firm.' We agree that this was adequate, when the defendant could cite no specific reason why the approved billing rates were too high. As for the bifurcation issue, we do not read Northcross v. Board of Education, 611 F.2d 624, 641 (6th Cir. 1979), cert. denied, 447 U.S. 911 (1980), to mandate bifurcation, when all of the awards in Northcross but one were not bifurcated.
 
 
 13
 The judgment is affirmed. No costs are awarded on appeal.